```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
 2
      BEVANS,                            .
 3                                       .
            Plaintiff,                   .
 4                                       . Case No. 12-cv-00249
      vs.                                .
 5                                       . Newark, New Jersey
      GENERAL MILLS, INC.,               . May 21, 2014
 6                                       .
            Defendant.                   .
 7                                       .

 8

 9                      TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE MADELINE COX ARLEO
10                  UNITED STATES MAGISTRATE JUDGE

11
      APPEARANCES:
12
      For the Plaintiff:     BRUCE DANIEL GREENBERG, ESQ.
13                           Lite DePalma Greenberg, LLC
                             Two Gateway Center
14                           12th Floor
                             Newark, NJ 07102
15                           (973) 623-3000
                             Email: Bgreenberg@litedepalma.com
16
                             ARIANA J. TADLER, ESQ.
17                           Milberg LLP
                             One Pennsylvania Plaza
18                           49th Floor
                             New York, NY 10119
19                           (212) 946-9453
                             Email: Atadler@milberg.com
20
                             MICHAEL R. REESE, ESQ.
21                           Reese Richman LLP
                             875 Avenue of the Americas
22                           Eighteenth Floor
                             New York, New York 10001
23                           (212) 643-0500

24

25
```

```
 1   (APPEARANCES continued)

 2   For the Defendant:      DAVID C. KISTLER, ESQ.
                             Blank Rome, LLP
 3                           301 Carnegie Center
                             3rd Floor
 4                           Princeton, NJ 08540
                             (609) 750-7700
 5                           Email: Kistler@BlankRome.com

 6                           JEFFREY FOWLER, ESQ.
                             O'Melveny & Myers LLP
 7                           400 South Hope Street
                             Los Angeles, CA 90071
 8                           (213) 430-6404
                             Email: Jfowler@omm.com

 9   Audio Operator:

10
     Transcription Service:      KING TRANSCRIPTION SERVICES
11                               901 Route 23 South, Center Ste. 3
                                 Pompton Plains, NJ 07444
12                               (973) 237-6080

13   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    (Commencement of proceedings at 11:57 A.M.)

2

3                    THE COURT:  Okay.  Welcome in.  Welcome in.

4                    Who else do we have?

5                    MR. KISTLER:  Good morning, Your Honor, David

6    Kistler from down the turnpike at Blank Rome.

7                    THE COURT:  Okay.

8                    MR. FOWLER:  And Jeffrey Fowler from O'Melveny &

9    Myers in Los Angeles.  I'm here for General Mills.

10                   THE COURT:  In from Los Angeles.  So you have --

11   aren't the Dodgers playing the Mets this week, I think.

12                   MR. FOWLER:  It may be.

13                   THE COURT:  I think.

14                   MR. FOWLER:  I have not been paying close enough

15   attention, but I hear the Dodgers are doing well.

16                   THE COURT:  They are.  They've done that, and

17   they're doing fine.  So you have a lot of traffic in LA.

18                   MR. FOWLER:  Yes.

19                   THE COURT:  Is -- the only place that looks like --

20   that makes New Jersey look not congested is LA.

21                   MR. FOWLER:  That's right.  Although our offices in

22   Times Square here and the foot traffic in Times Square is --

23                   THE COURT:  Crazy.

24                   MR. FOWLER:  -- similar to the 405.  But I'm proud

25   to say that I took the train here today.

 1              THE COURT:  Excellent.  You're very green.

 2              MR. FOWLER:  Yes, so I --

 3              THE COURT:  Very impressive.  Excellent.

 4         Okay.  And who do we have for the plaintiffs?

 5              MR. GREENBERG:  Good morning, Your Honor, Bruce

 6    Greenberg from down the block at Lite DePalma Greenberg.

 7              THE COURT:  Okay.

 8              MR. GREENBERG:  On behalf of the plaintiffs.

 9              THE COURT:  Okay.  Good to see you Mr. Greenberg.

10              MS. TADLER:  And Ariana Tadler from Milberg LLP,

11    right over at --

12              THE COURT:  Okay.  For the plaintiffs.

13              MS. TADLER:  Yes.

14              THE COURT:  Okay.

15              MR. REESE:  And Mike Reese from Reese Richman LLP,

16    on behalf of the plaintiffs as well.

17              THE COURT:  Okay.  Have a seat, everyone.

18         So I got the letter, and let's just talk -- a

19    couple of things that jumped out at me and we'll go through

20    all the issues is really depositions.  The big issue is

21    mediation.  Let's just go right to the heart of the issue,

22    because that jumped out at me at the end of the letter.  And

23    we can talk off -- off the record.  Why don't we go off the

24    record for a minute, because I'd like to just talk about --

25         (Recess:  11:58 A.M. to 12:04 P.M.)

 1          THE COURT:  Let's talk a little bit about

 2  discovery, and let's talk about how many depositions need to

 3  be taken of the defendants.  Okay?

 4          MS. TADLER:  Your Honor, would you like me to

 5  stand?

 6          THE COURT:  Sure, you can stand.  Standing is good.

 7          MS. TADLER:  Okay.  I'm at a little bit of a

 8  disadvantage today.  I managed to misplace my reading

 9  glasses, so I hope you'll --

10          THE COURT:  You can borrow mine.  It's a terrible

11  disadvantage, isn't it?

12          MS. TADLER:  Bear with me.  I'm going to do my

13  best.

14          So as of right now, we've had a number of

15  depositions that have been taken.  You'll recall that prior

16  to the stay, some depositions had been taken, but others had

17  been noticed.

18          Then we had the stay.  Once the stay was lifted,

19  the parties had been before Your Honor -- I didn't have the

20  privilege of being here that day.  My partner Henry Kelston

21  was here.  We indicated that we anticipated having to go over

22  the presumptive limit of 10, that the defendant was opposed

23  to that.  And we understood Your Honor's directive to be why

24  don't you take some and see what's happening and whether you

25  really do need more.  And then if there's good cause to show

1   why you would need more, you know, that would be entertained.

2   Not that we would necessarily get it, but that the concept

3   would be entertained.

4            Regrettably, only one deposition has been taken

5   since the parties were before you.  It took weeks -- I

6   believe it's six weeks -- to actually get deposition dates

7   scheduled.  The very first deposition in the five that have

8   been scheduled occurred this week.  We have the additional

9   four being anticipated to occur between now and June 23d.

10  One --

11           THE COURT:  Okay.  How many have you taken to date?

12           MS. TADLER:  One since the lifting of stay.

13           THE COURT:  But since discovery commenced.

14           MS. TADLER:  Six.

15           THE COURT:  Okay.  And how many have you scheduled?

16           MS. TADLER:  We have four more scheduled.

17           THE COURT:  Okay.

18           MS. TADLER:  The last being on June 23d, which

19  would be seven days before the currently set deadline for

20  discovery --

21           THE COURT:  Okay.  And do you anticipate needing

22  any more?

23           MS. TADLER:  I think the answer is likely yes, but

24  if we were to take your directive as you gave it during the

25  last conference, it would be premature for me to say to you

1   which ones or how many, because the plan was to take a few

2   and see where we are to determine who and how many.  I mean,

3   I could propose an alternative approach, which would be would

4   the Court be willing to entertain giving us an additional X

5   number of hours, say 20 hours, we would use those hours with

6   4-hour minimum banks.  And we're not telling you you're going

7   to use all of those hours.

8           But right now, we've only taken one more.  We

9   believe that information that came out of that deposition was

10  certainly elucidating.  We've not yet gotten the transcript

11  back.  And so at this point, we think that it would be

12  reasonable for a variety of reasons to extend the discovery

13  schedule to September 30.  As you know from the letter from

14  the defendant, they've indicated a willingness to extend by

15  60 days, but that would be only limited to certain recent

16  discovery that was propounded regarding the label change.

17          I suggest to Your Honor that 90 days is more

18  appropriate, taking us to September 30, because here are some

19  of the hiccups we've had.  We have a situation where it took

20  six weeks to actually get dates to start being scheduled.

21  Some of the deponents, it turns out are former employees, so

22  trying to get schedules set has been challenging.  To the

23  extent that we're going to add any additional deponents,

24  we're now talking about being in the summer.  It's hard to

25  get people --

 1              THE COURT:  I hear you.

 2              MS. TADLER:  -- to be available.

 3              THE COURT:  Let me just stop you for a minute.

 4              MS. TADLER:  Yes.

 5              THE COURT:  What about experts?  Are you going to

 6  need experts before summary motions or class certification

 7  motions?

 8              MS. TADLER:  We are going to need experts, but the

 9  schedule that was posited by the parties, which had some

10  redlining because of some differences of sentiment there,

11  contemplates how those experts would fall into line.  So

12  they're not included in the presumptive limit piece or even

13  this discovery period.

14              Correct me if I'm wrong.

15              MR. FOWLER:  That's correct.

16              THE COURT:  And they're not -- they're not

17  contemplated before motions.

18              MS. TADLER:  They're part of the motion practice

19  schedule.  They're --

20              THE COURT:  Okay.

21              MS. TADLER:  -- they're within the way in which

22  those days were working off the end of discovery.  If -- if

23  you look at the proposed schedule, you'll see it's -- you

24  know, so many days after the end of discovery -- thank you --

25  so many days after the end of discovery for certain things.

1   So, for example, any expert reports -- there's the completion

2   of discovery of any expert relied upon in support of summary

3   judgment 105 days after the close of fact discovery.  And

4   then if you also see with respect to (E) 140 days after,

5   there are any expert reports relied upon in opposition.

6   Completion of discovery of experts is in 3 (F).

7          Again, this was kept separately from the actual

8   factual discovery that the parties have been engaged in and

9   that is currently subject to the deadline of June 30.

10          The other point that I'd like to raise for

11  Your Honor is, you know, the new stipulation and schedule

12  that's out there, defendants determined that they would

13  prefer to move forward with summary judgment and class

14  certification motion practice as opposed to waiting for an --

15  a ruling on the motion to dismiss, and as such, they've

16  decided they're going to answer the complaint on May 29th.  I

17  don't know what that answer is going to say.  And I imagine

18  there may be some things that are going to be in that answer

19  that may give rise to our wanting to test some of the things

20  in there.

21          THE COURT:  By way of interrogatories or by way of

22  depositions?

23          MS. TADLER:  It could be interrogatories,

24  depositions, or document requests.  I don't know.

25          But 5/29 is literally one month before the June 30

1   deadline, so even if we get the answer on 5/29 and were to

2   review it within 24 hours, that really doesn't -- that's not

3   how I like to practice law.  I like to be thoughtful.

4            THE COURT:  Okay.

5            MS. TADLER:  I'd like a few days to digest that.

6            THE COURT:  I hear you.

7            MS. TADLER:  In addition, we really have tried to

8   be very, very diligent in pursuing the depositions that we

9   have.  As I mentioned, we've got some former employee issues.

10  We've got the scheduling plus the summer coming about.

11           We also have some document issues that have now

12  been brought to bear.  We have some privilege issues that

13  have arisen.  There's --

14           THE COURT:  Have they put in -- I read about the --

15  I noted in your letter about the in-house counsel and

16  documents.

17           I think -- I thought -- I understood it as I read

18  the letter, they turned over the one document and they

19  haven't put any documents on a privilege log?

20           MS. TADLER:  So here's the issue that we're

21  grappling with and we've not yet had an opportunity to fully

22  meet and confer with the defendant because it's really come

23  to light.

24           Jill Baltieri [phonetic] is somebody for whom, as

25  set forth in the letter, there's been this discussion back

1   and forth about where are her documents.  Originally,

2   defendant objected because of burden associated with

3   anticipated privilege review and the like.

4            Ultimately, they went through a review, as they

5   reported to us and reported in the letter, where they found

6   one responsive document and otherwise Ms. Baltieri has no

7   privileged documents, which is a little odd, given what we

8   were talking about back before the stay.

9            Moreover, I myself looking at the logs, the

10  redaction logs and in particular, the privilege log, have

11  noted that there are a number of entries of documents that

12  have been withheld with Ms. Baltieri's name on them, she is

13  the recipient of certain documents, and yet defendants are

14  now telling us that she does not have any privileged

15  documents.  That's -- strikes me as odd.  I'm not casting

16  aspersions.  It's just striking me as curious and something

17  that I would need to explore with them as to if this

18  custodian or this person at General Mills was under a legal

19  hold, how is it that she doesn't have any privileged

20  documents?  And is it the case that perhaps there is an issue

21  there that we haven't yet gotten to about the hold being held

22  the way it should have been?  Or is it possible that because

23  Ms. Baltieri's responsibilities -- they make a point in their

24  letter that she relinquished her responsibilities at a

25  certain point -- were her documents transferred to somebody

1  else and that would be the more appropriate custodian?

2  There's just a lot there.

3          And, again, I want Your Honor to know I do a lot of

4  work in the discovery arena and particularly with

5  e-discovery.  I don't start making accusations about

6  discovery until I've really had an opportunity to explore it

7  with the other side, take a little bit of discovery, if I

8  need to, to better understand what's happened.

9          I'm just not sure what's happened here, and we have

10  not yet had the opportunity to meet and confer.  And it's

11  anticipated in the letter.

12          As you well know, meeting and conferring takes

13  time.

14          THE COURT:  I hear you.

15          MS. TADLER:  June 30th is around the corner.

16          THE COURT:  I hear you.

17          MS. TADLER:  And then just another document

18  example, there are certain documents relating to ingredient

19  specs that we had been asking for.  We recently received a

20  production.  That production was not consistent with the

21  format in which they were requested.  There's been some

22  discussion.  Defendant has agreed to re-produce them.

23  There's a usability problem right now.  There are links

24  within those documents which are unusable, and we believe we

25  have the right to have that usability under the rules.

1   They've agreed to re-produce them.

2           But that's not the complete picture, because in

3   addition, there are ingredient spec-related documents that

4   involve vendors, which we had also asked for, and those have

5   not been part of the production.  And where we've last left

6   off on that is we still want them, they were part of

7   deposition testimony that we were able to extract and where

8   in the course, defendants have indicated that they're

9   inclined to meet and confer with us.

10          I'm more than happy to meet and confer and try to

11  reach resolutions, but I can't do that successfully and

12  effectively with a noose around my neck.

13          THE COURT:  Got you.

14          MS. TADLER:  Thank you.

15          THE COURT:  Counsel.

16          MR. FOWLER:  Your Honor, let me address each of the

17  issues in turn.  And I just want to start, I think, by

18  framing the issue with some context on discovery generally.

19          There have now been four successive discovery

20  cut-offs in this case, each one later than the prior one.

21  And part of the reason that's been so is because we have

22  throughout attempted to work cooperatively with the

23  plaintiffs to resolve any discovery issues.

24          But at a certain point, it has to end.  And I think

25  we're never going to reach a perfect agreement with

1   plaintiff's counsel as to whether or not they're completely

2   satisfied with our discovery.  We don't necessarily agree

3   that everything we've turned over to date is something they

4   need.  But at a certain point it has to end.

5          So let me speak to the deposition issue first.  The

6   remaining depositions were all noted about 12 days before the

7   prior discovery cut-off.  And we at that time agreed to give

8   them up to the 10.  And our understanding, coming out of the

9   March 17 conference, was this extended period of time was

10  necessary and provided in order to complete those remaining

11  depositions, with plaintiffs having an opportunity to seek

12  more, if they thought they needed them.

13         Well, nine of the ten depositions will be completed

14  by June 12th.  That is going to give plaintiffs three weeks

15  to front the issue as to whether or not there's good cause

16  for additional depositions.

17         The remaining deposition is taking place on

18  June 23d.  It's of a marketing manager who we think is

19  redundant of a witness whose deposition was conducted well

20  over a year ago at this point.

21         So the existing schedule accommodates plaintiff's

22  need to seek more depositions, if that's justified.

23         THE COURT:  Okay.  Let me stop you for a minute.

24         Let me tell you about my philosophy so you can sort

25  of respond to where I'm coming from.

1           I think this case has moved pretty quickly, given

2    how substantial the issues are.  It is a large case.  It is a

3    substantial case.  It has a lot of issues in it.  It's a

4    class action.

5           And I have not -- I have cases where there's delay

6    and there's failure to be responsive.  The lawyers in this

7    case are not those lawyers.  They're good lawyers who have

8    worked hard.

9           I'm also a realist.  I don't put discovery

10   schedules in place that (A) are either unrealistic, given the

11   issues; or (B) ridiculously burdensome on lawyers.

12          And so I believe that the June 30 day is

13   unrealistic.  It's unrealistic for a number of reasons, and

14   I'll let you respond to it.  One, I started out by saying

15   I -- I like to give lawyers, like I liked to be given when I

16   was a lawyer, a full and fair opportunity to prosecute and

17   defend my case.  And I think in this case, it's possible that

18   there'll be -- there'll be a need for additional depositions;

19   not many, but maybe one or two.  And I take plaintiff's

20   counsel at her word when she says until I take these next

21   three, I'm not going to know if I need additional ones.

22   And -- and I -- in a case like this, I think it's possible.

23   I'll give you a chance to explain to me, if you want to

24   oppose it, why it is redundant.  But I like to treat lawyers

25   as professionals, and sometimes you say -- you may say, well,

 1  it's redundant and the plaintiff may be thinking, well,

 2  there's something else here I want to get that will help

 3  prosecute my case.  So I give lawyers the benefit of the

 4  doubt because I think professionals should be treated that

 5  way.  And so, there may be additional depositions.  One.

 6          There's document issues that are unresolved.

 7  She -- Ms. Tadler just went through them.

 8          And finally, there is the summer, which is a

 9  difficult month.

10          So I'm inclined to give her additional time to

11  complete depositions and discovery in a reasonable way.  And

12  I don't -- this is not a case where the lawyers have been

13  dragging their heels.  And I know she -- you know, it wasn't

14  noticed the night before.  It was noticed a week or two

15  before.  That's what lawyers do.  They get focused and they

16  notice depositions.

17          So I don't -- I'm not inclined to adhere to a

18  June deposition cut-off.  I'm thinking something like the end

19  of the summer, September 1.  And we can talk again midsummer

20  to see where everyone is and to see if you're done, if you

21  are getting close to being done at the same time, maybe in

22  the August or early September, we can talk about mediation.

23          But that's what I'm inclined to do, with the caveat

24  of continue to meet and confer on discovery issues regarding

25  documents and to meet and confer on what, if any, additional

1   depositions need to be taken, and if we can't resolve those

2   in a professional way, to send me -- efile letters, and I'll

3   get you on the phone and I'll decide whether the additional

4   depositions to go forward.

5          But that's what I'm inclined to do in this case.

6          And I know you're anxious to get everything done,

7   but there's -- it's a substantial case, and I'm satisfied

8   that they have demonstrated good cause for some additional

9   breathing room to get everything done in a reasonable

10  fashion.  That's not an invitation to wait until August to

11  get things resolved because August is a notoriously difficult

12  month to get things done.  It's an in- -- it's a request to

13  tee things up now in June and early July so when we talk

14  again at the end of July, you could tell me that you're close

15  to being done and that we could talk about picking a mediator

16  maybe for right after Labor Day to take a shot before motion

17  practice is done.

18          Okay?

19          MR. FOWLER:  Your Honor, I would be remiss in --

20  unless I at least attempted to respond about the document

21  issues.

22          THE COURT:  Absolutely.

23          MR. FOWLER:  Let me take each of the document

24  issues in turn.

25          The corn specification sheets really is an area of

1   discovery that we think is completely redundant of

2   information that's already been provided.  As you know from

3   the papers, the central issue in this case is whether or not

4   it was misleading to refer to the corn in Kix cereal as

5   "all-natural."

6          It is not an issue in dispute factually that

7   General Mills doesn't source non-bioengineered corn.  I mean,

8   we're not maintaining that we source non-GMO corn, and so

9   plaintiffs are going to have to prove that there were GMOs in

10  the documents -- or GMOs in the cereal.  Excuse me.

11         And these documents go to that issue.

12         The only other issue that they could be reasonably

13  associated with is the identification of suppliers of our

14  corn.

15         THE COURT:  Yes.

16         MR. FOWLER:  Which, again, we think is -- is

17  frankly an -- issue.  But nonetheless, we produced to the

18  plaintiffs a list of our corn suppliers.  That list was

19  produced in December 2012, and it was called to their

20  attention upon their request in October of 2013.

21         So the additional time, we fear, will just create

22  additional churn on issues like this where substantively,

23  there is no further fact gathering that's necessary or at

24  least is proportional to the parties' respective discovery

25  needs.

```
 1              THE COURT:  Let me stop you for a minute.  Nothing
 2   has been raised with me.  So if it -- if a discovery issue,
 3   if you can't resolve -- confer on it or you meet and confer
 4   and you say, sounds like you are saying it's not relevant, of
 5   course, we have a broader discovery for relevancy under
 6   discovery rules than evidential rules at trial.  That's a
 7   tough one, unless it's real burdensome, right, under Rule 26.
 8              But if that's your position, and they're looking
 9   for it and they're trying to meet and confer under our local
10   rules, then -- and if you're very comfortable saying this is
11   completely irrelevant under any stretch of the imagination,
12   then you can bring up -- then I'll make a ruling.  I haven't
13   made one since -- I have -- I don't think I've made one
14   discovery ruling in this case.  But that's what the time will
15   allow.  Number one.
16              The other thing, as you point out, is -- which
17   plaintiff's counsel pointed out, you haven't even filed your
18   answer yet.  Filing an answer could change the complexion a
19   little bit about what your affirmative defenses are.  And I'm
20   going to allow five additional single-part interrogatories
21   by -- you know, by mid-June, and of course, any additional
22   document requests.  So ...
23              MR. FOWLER:  And --
24              THE COURT:  It's hard to say they --  you know, I
25   know you had the motion, and I appreciate that it's been
```

 1  withdrawn.  I'm sure Judge McNulty appreciates it more than I

 2  do.

 3          But the -- the end of the day is you're filing an

 4  answer.  There may be a little bit more -- fair exploration

 5  of affirmative defenses and denials that need to be explored

 6  through discovery.

 7          MR. FOWLER:  Understood.  Understood.

 8          And I want to just make sure I clarify my position

 9  on that first discovery issue.  We are not resisting the

10  production of those documents, the additional documents.  The

11  issue there is we expect to be able to produce them well

12  before June 30th.  And allowing document to discovery --

13  document discovery to main- -- to remain open beyond

14  June 30th is, from our perspective, simply an opportunity to

15  generate more of these fundamentally non-issues in terms of

16  the completeness and thoroughness of our production.

17          With respect to Ms. Baltieri's documents, as the

18  parties note in their letter, we're going to meet and confer

19  on that issue, but just to preview our response, Ms. Baltieri

20  was -- for Kix a year and a half before this claim -- this

21  lawsuit was filed.  She's been on hold about 5 months prior

22  to the time of filing the lawsuit.  And the volume of her

23  production is explainable and will be explained to plaintiffs

24  by duplication procedures that we've used or processes that

25  we've used.  There's 21 documents that she had that were just

1   duplicative of material already in the production.  So,

2   again, we think these are exemplars of document issues that

3   are ultimately non-substantive, and allowing additional time

4   to generate more of them is unnecessary, in our view.

5            THE COURT:  I hear you.  But I'm going to extend it

6   in anyway, and I think it's fair and I think it's reasonable.

7   And I think there may be some issues with the document

8   production, what I just heard from Ms. Tadler about the

9   privilege log, and she has an opportunity to ask you

10  questions and try to meet and confer on those issues.

11  Document issues aren't -- aren't resolved instantly -- though

12  she indicates like this.

13           I'm going to extend discovery until September 1.

14  I'm going to ask that five days in advance you send me a

15  status letter, a joint status letter, just like you did the

16  last time you did; it was awesome.

17           And --

18           MS. TADLER:  Your Honor, may I ask some questions?

19           THE COURT:  Yup.  Sure.

20           MS. TADLER:  Ariana Tadler, for the record.

21           THE COURT:  Okay.

22           MS. TADLER:  One is -- so September 1 is actually

23  Labor Day.

24           THE COURT:  Okay.

25           MS. TADLER:  It is literally Labor Day.  And I

1   wonder whether -- and I --

2                THE COURT:  September 5th.

3                MS. TADLER:  Oh, thank you.  Thank you.

4                THE COURT:  All right.  And we'll talk about it in

5   July.  I'd like to talk again in July if you guys are all

6   around, July 31 at noon?

7                MS. TADLER:  July -- I would like to speak in July

8   too.

9                My other question was going to be whether we might

10  set something actually in June to make sure that things are

11  moving apace.  I don't like when things suddenly end up

12  rearing --

13               THE COURT:  I hear you, but I think June is a

14  little premature.  I can move it up a week or two in July, if

15  you want to.  We'll talk July 15th at noon.  Okay?  July 15th

16  at noon.

17               And if -- and -- because you're going to need to

18  get me a letter five days in advance, let me know how the

19  depositions are going, let me know if you need any other

20  issues, and flag any document issues that have risen that you

21  haven't been able to resolve.  If you -- if you can -- if you

22  are satisfied that you have not fully -- you fully explored

23  meet-and-confer and you can't -- and you can't resolve them

24  and you want to send me a letter in July or June, I'll let

25  your adversary respond and then I'll get a telephone call on.

1   So, you know, it takes a lot to get the letter and have

2   someone respond -- we send a reply brief.

3              So we'll keep that July 15th date on at noon.  I'll

4   ask plaintiff's counsel to initiate.  Send me the letter five

5   days in advance.  And let me know if you decide in June --

6   what I don't want to get is a big long privilege letter on,

7   like, you know, July 13th, where they don't -- because I get

8   that, I'll just kick the conference until -- until defense

9   counsel has a chance to respond.  But if it happens, it

10  happens.  Just let me know in the letter.  But if there's

11  something you could tee up before then that you need me to

12  rule, I'm happy to do it.

13             I'll keep it as -- by phone.  If it's -- if it

14  becomes a big issue with the document production, we may have

15  to switch it to an in-person conference.  But I'll keep it

16  for phone.  Let me know if there's a problem.  Send me a

17  letter.  Make sure you efile everything.

18             I'll allow five additional interrogatories to be

19  served by June -- when -- when's your answer going to be

20  filed?

21             MS. TADLER:  The 29th of May.

22             THE COURT:  So no later than June 13th, but you can

23  do it sooner than that.

24             I'm not going to adopt your order with those other

25  dates.  We'll put that order into place as soon as we get all

 1   this accomplished.

 2            And -- and I prefer to have -- once we have a final

 3   end date, which I hope this is going to be, then we can put

 4   actual dates for all those other.  I don't like to put 180

 5   days, because down the road, you have to sit there and do the

 6   math, and it is very confusing.

 7            So we'll do it this way.  And any other problems,

 8   concerns or questions, send me a -- send me a letter efiling,

 9   and we'll talk again in July.  Okay?

10            UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.

11            THE COURT:  Thank you.  Safe trip.

12            (Conclusion of proceedings at 12:27 P.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          Certification
 2          I, SARA L. KERN, Transcriptionist, do hereby certify
 3    that the 25 pages contained herein constitute a full, true,
 4    and accurate transcript from the official electronic
 5    recording of the proceedings had in the above-entitled
 6    matter; that research was performed on the spelling of proper
 7    names and utilizing the information provided, but that in
 8    many cases the spellings were educated guesses; that the
 9    transcript was prepared by me or under my direction and was
10    done to the best of my skill and ability.
11          I further certify that I am in no way related to any of
12    the parties hereto nor am I in any way interested in the
13    outcome hereof.
14
15
16
17
18    S/ Sara L. Kern                     23rd of May, 2014
19    _____    _____
      Signature of Approved Transcriber           Date
20
21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      901 Route 23 South, Center Suite 3
23    Pompton Plains, NJ 07444
      (973) 237-6080
24
25
```