**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg, Esq.
570 Broad Street, Suite 1201
Newark, NJ  07102
Telephone:  973-623-3000 x3820
Facsimile:  973-877-3845

*Attorneys for Plaintiffs*
(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE GENERAL MILLS, INC. KIX CEREAL LITIGATION | **Case No. 2:12-cv-00249-KM-JBC**<br><br>**Return Date: November 16, 2015** |

## PLAINTIFFS' OPPOSITION TO DEFENDANT GENERAL MILLS, INC.'S MOTION TO STRIKE PORTIONS OF THE DECLARATION OF HENRY KELSTON

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ................................................................................ 1

II.     APPLICABLE RULES ....................................................................... 3

      A.      Local Civil Rule 7.2(a) ............................................................ 3

      B.      Federal Rule of Evidence 701 .................................................. 4

      C.      Federal Rule of Evidence 1006 ................................................ 6

III.    ARGUMENT ...................................................................................... 7

      A.      Mr. Kelston's statements satisfy the strictures of Local Civil
             Rule 7.2(a) because they were made with personal knowledge
             and do not contain factual or legal argument. ........................... 8

      a.      Mr. Kelston has personal knowledge of each of the facts to
             which he attests in his Declaration. ........................................... 9

      b.      Mr. Kelston statements provide only the factual predicate for
             arguments that are properly contained in Plaintiffs' substantive
             briefs. ...................................................................................... 11

      B.      Sixth-grade arithmetic does not constitute "impermissible
             expert testimony" barred by Federal Rule of Evidence 702. ... 13

      C.      Federal Rule of Evidence 1006 expressly permits summary
             evidence to prove the contents of voluminous materials such as
             the gigabyte of Nielsen sales data spanning more than a dozen
             spreadsheets. .......................................................................... 16

IV.     CONCLUSION ................................................................................. 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bryant v. Farmers Ins. Exch.*,
  432 F.3d 1114 (10th Cir. 2005) ....................................................................5

*DIRECTV Inc. v. Budden*,
  420 F.3d 521 (5th Cir. 2005) ......................................................................4

*Donlin v. Philips Lighting N. Am. Corp.*,
  581 F.3d 73 (3d Cir. 2009)........................................................................4

*Filippo v. Bongiovanni*,
  743 F. Supp. 327 (D.N.J. 1990) ..................................................................4

*Hutchins v. UPS*,
  197 F. App'x 152 (3d Cir. 2006) ..........................................................10, 11

*Khodara Environmental II, Inc. v. Chest Township*,
  No. 3:2002-96, 2007 U.S. Dist. LEXIS 79612 (W.D. Pa. Oct. 26,
  2007) ...........................................................................................3, 9

*Kohn v. Woods*,
  541 F. App'x 163 (3d Cir. 2013) ...............................................................18

*Mahoney v. McDonnell*,
  No. 14-4257, 2015 U.S. App. LEXIS 10662 (3d Cir. N.J. June 24,
  2015) .............................................................................................17

*Major Tours, Inc. v. Colorel*,
  799 F. Supp. 2d 376 (D.N.J. 2011) .........................................................5, 15

*McCann v. George W. Newman Irrevocable Trust*,
  No. 03-cv-6077 (DMC), 2007 U.S. Dist. LEXIS 33610 (D.N.J. May 7,
  2007) ...........................................................................................3, 9

*McGinnis v. Am. Home Mortg. Servicing*,
  No. 5:11-CV-284 (CAR), 2014 U.S. Dist. LEXIS 88435 (M.D. Ga.
  June 30, 2014)....................................................................................5

*McLendon v. Cont'l Grp., Inc.*,
  602 F. Supp. 1492 (D.N.J. 1985) ...............................................................10

*Morro v. DGMB Casino, LLC*,
    No. 13-cv-5530 (JBS/JS), 2015 U.S. Dist. LEXIS 85204 (D.N.J. June
    30, 2015) ..............................................................................................................17

*United States v. Bansal*,
    663 F.3d 634 (3d Cir. 2011)......................................................................6, 18

*United States v. Malik*,
    424 F. App'x 122 (3d Cir. 2011) ...............................................................6, 16

*United States v. Manamela*,
    463 F. App'x 127 (3d Cir. 2012) ...............................................................6, 16

*United States v. Onque*,
    No. 10-510 (JBS), 2015 U.S. Dist. LEXIS 15602 (D.N.J. Feb. 9, 2015) ...................16

*United States v. Sepúlveda-Hernández*,
    752 F.3d 22 (1st Cir. 2014)...............................................................5, 13, 14

*United States v. Thompson*,
    393 F. App'x 852 (3d Cir. 2010) ...................................................................14

*W. Oilfields Supply Co. v. Goodwin*,
    461 F. App'x 624 (9th Cir. 2011) ...................................................................5

*Watkins v. Merriel*,
    No. 12-4851 (FLW), 2015 U.S. Dist. LEXIS 130998 (D.N.J. Sept. 29,
    2015) ..................................................................................................17

**Statutes**

28 U.S.C. § 1746.....................................................................................................3

**Other Authorities**

Fed. R. Evid. 701 ......................................................................... *passim*

Fed. R. Evid. 702 .............................................................................4, 5, 13

Fed. R. Evid. 803 .................................................................................18

Fed. R. Evid. 1006 ...................................................................... *passim*

L. Civ. R. 7.2................................................................................ *passim*

L. Civ. R. 56................................................................................10

## I.    **INTRODUCTION**

General Mills moves to strike portions of Henry J. Kelston's Declaration[1]

for containing factual argument, legal argument, and expert testimony, none of

which can be found anywhere in Mr. Kelston's Declaration.  Rather, the

challenged portions of the Kelston Declaration speak exclusively about two sets of

documents General Mills produced to Plaintiffs:  (1) Nielsen sales data; and (2)

data underlying the $118,000 survey Henry D. Ostberg conducted for General

Mills.[2]

With regard to the Nielsen sales data, Mr. Kelston states only that:  (1)

General Mills produced sales data from Nielsen to Plaintiffs; (2) the sales data is

from a certain time range and contains certain fields; (3) Mr. Kelston examined the

data and could identify average unit prices contained therein; and (4) the data

identified can be found in Plaintiffs' substantive briefs and the underlying data will

be made available at the Court's request for inspection in native form.

---

[1] The Declaration of Henry J. Kelston (Dkt. 159 ("Kelston Declaration")) was submitted in Support of Plaintiffs' Oppositions to General Mills, Inc.'s Motions for Summary Judgment.

[2] Although General Mills asks the Court to strike paragraphs 1-7 of the Kelston Declaration, General Mills only provides arguments with regard to paragraph 3 and paragraph 6. (*See* Defendant General Mills, Inc.'s Memorandum of Law in Support of Motion to Strike Portions of the Declaration of Henry Kelston (Dkt. 175) ("Def. Mem.") at 4-7.)

Not only does Mr. Kelston have personal knowledge of each of the facts to which he attests, but the challenged paragraphs do nothing more than provide the factual predicate for substantive arguments that are properly contained in Plaintiffs' briefs.

Similarly, with regard to data from the Ostberg Survey, Mr. Kelston states only that:  (1) the Admar Group produced the data underlying the Ostberg Survey to Plaintiffs; (2) Mr. Kelston conducted simple arithmetic to identify the average number of responses to certain questions from the Ostberg Survey; and (3) the resulting calculations can be found in Plaintiffs' substantive briefs and the underlying data will be made available at the Court's request for inspection in native form.

Again, not only does Mr. Kelston have personal knowledge of each of these facts, but General Mills admitted in its Responses to Plaintiffs' Supplemental Statements of Fact that the challenged paragraphs are undisputed statements of material fact for purposes of its motions for summary judgment.

General Mills' arguments that are not mooted by its admissions of the challenged statements are meritless.  Neither General Mills nor the cases it cites provide a basis to strike any portion of Mr. Kelston's Declaration.  Mr. Kelston's Declaration is limited to facts about which he has personal knowledge, satisfying the strictures of Local Civil Rule 7.2(a).  To the extent General Mills quibbles with

Mr. Kelston's factual representations regarding the Nielsen sales data and the Ostberg Survey data, Mr. Kelston's statements are not "impermissible expert testimony" so much as simple arithmetic that is permissible lay testimony under Federal Rule of Evidence 701.  Finally, Mr. Kelston's factual representations are independently admissible as summary evidence of voluminous materials under Federal Rule of Evidence 1006.

Accordingly, the Court should deny General Mills' motion to strike portions of the Kelston Declaration.

## II.   <u>APPLICABLE RULES</u>

### A.   Local Civil Rule 7.2(a)

Local Civil Rule 7.2(a) provides in relevant part that declarations executed pursuant to 28 U.S.C. § 1746 "shall be restricted to statements of fact within the personal knowledge of the signatory," and shall not contain arguments of the facts or the law.  L. Civ. R. 7.2(a).  The Rule's requirement of "personal knowledge" can be satisfied in several ways, including from an attorney's personal involvement in a matter as a party's counsel, *see McCann v. George W. Newman Irrevocable Trust*, No. 03-cv-6077 (DMC), 2007 U.S. Dist. LEXIS 33610, at *17-18 (D.N.J. May 7, 2007), or "through a review of records of the matter in question," *Khodara Environmental II, Inc. v. Chest Township*, No. 3:2002-96, 2007 U.S. Dist. LEXIS 79612, at *3 (W.D. Pa. Oct. 26, 2007) (explaining that "personal knowledge"

under Fed. R. Civ. P. 56(c)(4), from which Local Civil Rule 7.2(a) is drawn, includes more than "knowledge gained through one's sensory perceptions"); *see also, e.g.*, *DIRECTV Inc. v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005) ("personal knowledge" may be inferred from participation in a matter) (collecting cases)). Statements in a declaration that are not based on personal knowledge may nevertheless be independently admissible as helpful lay testimony under Fed. R. Evid. 701. *See Filippo v. Bongiovanni*, 743 F. Supp. 327, 332 n.3 (D.N.J. 1990), *rev'd on other grounds*, 961 F.2d 1125 (3d Cir. 1992).

## B.    Federal Rule of Evidence 701

Federal Rule of Evidence 701 provides that a witness may provide lay testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Admissible lay testimony "results from a process of reasoning familiar in everyday life." Fed. R. Evid. 701 Adv. Comm. Notes. In contrast, expert testimony "results from a process of reasoning which *can be mastered only by specialists in the field*." *Id.* (emphasis added); *see also Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009); 4 Weinstein's Federal Evidence § 701.03[1] at 701-14 (2d ed. 2011) ("Indeed, the

2000 amendment to Rule 701 is intended to induce the courts to focus on the reasoning process by which witnesses reached their opinions …..").

Courts have consistently concluded that basic mathematic calculations do not constitute expert testimony and should be admitted as lay testimony under Federal Rule of Evidence 701. *See, e.g.*, *Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 412 n.35 (D.N.J. 2011) (doubting expert could be qualified under Fed. R. Evid. 702 where "[t]he expert performed nothing more than a clerical function, adding up expenses and subtracting costs based on financial documents," and noting that "[t]he jury could do this equally as well …."); *McGinnis v. Am. Home Mortg. Servicing*, No. 5:11-CV-284 (CAR), 2014 U.S. Dist. LEXIS 88435, at *21 & n.57 (M.D. Ga. June 30, 2014) (collecting cases), *aff'd*, 2015 U.S. App. LEXIS 8963 (11th Cir. May 29, 2015); *United States v. Sepúlveda-Hernández*, 752 F.3d 22, 34-35 (1st Cir. 2014) ("[W]e have scant difficulty in concluding that Rule 701 is the better fit for simple multiplication …."); *W. Oilfields Supply Co. v. Goodwin*, 461 F. App'x 624, 626 (9th Cir. 2011) ("Any calculations … required only rudimentary math skills and could qualify as lay opinion testimony under Fed. R. Evid. 701."); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) (calculating the mean of 103 numbers was "well within the ability of anyone with a grade-school education" and "aptly characterized as a lay opinion").

### C. Federal Rule of Evidence 1006

Federal Rule of Evidence 1006 permits parties to "use a summary … or calculation to prove the contents of voluminous writings … that cannot be conveniently examined in court" if the proponent makes "originals or duplicates available for examination or copying, or both."  Fed. R. Evid. 1006.

Summaries are permitted where the proponent can "lay a proper foundation and show that the summation is accurate."  *United States v. Malik*, 424 F. App'x 122, 128 (3d Cir. 2011); 4 Weinstein's Federal Evidence § 1006.07[1] at 1006-26 (2d ed. 2011) (noting that the fact that summaries "might be inaccurate is not a ground for excluding them without determining whether they are, in fact, inaccurate").  While the Rule "does not require that the underlying materials actually be admitted into evidence," the underlying materials must themselves be admissible.  *United States v. Manamela*, 463 F. App'x 127, 132 (3d Cir. 2012). Once these requirements are satisfied, the summary itself is admitted as an evidentiary substitute for the voluminous writing.  *See United States v. Bansal*, 663 F.3d 634, 668 (3d Cir. 2011); *see also* 2 McCormick on Evidence § 241 at 166 & 167 (7th ed. 2013) ("[T]he rule functions as a form of exemption from the requirement of producing originals …. [A] summary admitted under this rule is being introduced substantively in place of the matters summarized ….").

The general rule is that the use of summaries is a matter that rests within the sound discretion of the District Court.  *Malik*, 424 F. App'x at 127-28; *Bansal*, 663 F.3d at 668 (affirming summary exhibits from spreadsheet data and noting that the Court's discretion "in this context is very broad.").

## III.  <u>ARGUMENT</u>

As an initial matter, although General Mills moves to strike seven paragraphs from the Kelston Declaration, it provides no argument with regard to five of the challenged paragraphs, likely because they are so patently permissible that no reasonable challenge can be levied against them.  These include paragraphs 1, 2, and 4, which state in regard to the Nielsen sales data that General Mills produced the Nielsen sales data to Plaintiffs,[3] that the data is for a certain time range and contains certain fields,[4] and that the data Mr. Kelston identified is in Plaintiffs' substantive briefs and the underlying data will be made available at the Court's request for inspection in native form.[5]  General Mills also offers no

---

[3] (Kelston Decl. ¶ 1 ("On October 31, 2014, in response to Plaintiffs' discovery requests, General Mills produced files containing sales and price data for products in the "Ready-to-Eat" cereal category, including Kix cereals.").)

[4] (*Id.* ¶ 2 ("The data, which General Mills received from the Nielsen company, include Dollar Volume, Unit Volume and Average Unit Price for each product tracked, given in 4 or 5 week increments, from approximately June 2010 through May 2014.").)

[5] *Id.* ¶ 4 ("The results of my inquiry are stated in Plaintiffs' Memorandum in Opposition to Defendant General Mills, Inc.'s Motion for Summary Judgment on Damages. If the Court wishes to examine the sales data, Plaintiffs will gladly provide the native Excel files for the Court's inspection.").)

argument with regard to paragraphs 5 or 7, which state in regard to the Ostberg Survey data that the data was provided to Plaintiffs,[6] and that the results of Mr. Kelston's calculations are in Plaintiffs' substantive briefs and the underlying data will be made available at the Court's request for inspection in native form.[7]  It is apparent that Mr. Kelston has personal knowledge of these facts, which General Mills essentially concedes in their brief.  (*See, e.g.*, Def. Mem. at 4-5 (describing "data which General Mills received from the Nielsen company and subsequently produced to Plaintiffs in discovery.").)  Because General Mills cannot and does not provide any arguments with regard to Mr. Kelston's personal knowledge of the facts set forth in paragraphs 1, 2, 4, 5, or 7, its request to strike these paragraphs should be denied.

### A. Mr. Kelston's statements satisfy the strictures of Local Civil Rule 7.2(a) because they were made with personal knowledge and do not contain factual or legal argument.

In his Declaration, Mr. Kelston states with regard to the Nielsen sales data that he "was able to identify the high and low Average Unit Prices" for the twelve-

---

[6] (*Id.* ¶ 5 ("On July 13, 2015, in response to a subpoena issued by Plaintiffs, The Admar Group, Inc. (the survey administration company owned by Dr. Henry Ostberg) produced native Excel files indicating the responses given by each participant to each of the questions in the Ostberg Survey.").)

[7] (*Id.* ¶ 7 ("The results of my inquiry are stated in Plaintiffs' Memorandum in Opposition to Defendant General Mills, Inc.'s Motion for Summary Judgment Under the First Amendment, and in Plaintiffs' Memorandum in Opposition to Defendant General Mills, Inc.'s Motion for Partial Summary Judgment. If the Court wishes to examine the survey data, Plaintiffs will gladly provide the native Excel files for the Court's inspection.").)

and eighteen-ounce boxes of Kix in the regions where Plaintiffs made their purchases during the relevant time periods.  (Kelston Decl. ¶ 3.)  Concerning the Ostberg Survey data, Mr. Kelston states that he "was able to calculate the average number of responses given" to two questions, and that one had "an average of 1.5 responses," and the other had "an average of 1.2 responses."  (*Id.* ¶ 6.)  Mr. Kelston also noted that "more than 180 different responses were recorded."  (*Id.*)

General Mills claims first, that Mr. Kelston had no personal knowledge of these facts, and second, that these facts constitute impermissible argument. Neither is true.

### a.   Mr. Kelston has personal knowledge of each of the facts to which he attests in his Declaration.

A plain reading of the Declaration reveals that Mr. Kelston is testifying exclusively to facts within his personal knowledge.  Despite General Mills' apparent belief that Mr. Kelston is affirmatively and independently representing as fact various Average Unit Prices revealed by the Nielsen sales data, Mr. Kelston is merely stating that in reviewing the Nielsen sales data, he "was able to identify" the data contained therein.  Such a review is entirely permissible.  For example, in *Khodara Environmental II, Inc. v. Chest Township*, the Court found that "a review of records of the matter in question" was sufficient to confer personal knowledge of facts that could be stated in a Declaration.  No. 3:2002-96, 2007 U.S. Dist. LEXIS 79612, at *3 (W.D. Pa. Oct. 26, 2007).  There, even though the declarant

did not personally participate in the matters to which he attested, his familiarity

with the record provided sufficient personal knowledge to sustain his declaration.

*See also McCann*, 2007 U.S. Dist. LEXIS 33610, at *17-18.

Similarly with regard to the Ostberg Survey data, Mr. Kelston clearly has

personal knowledge of which data were provided to Plaintiffs.  Moreover, General

Mills has separately admitted that the challenged figures are undisputed statements

of material facts, rendering its motion with regard to those paragraphs moot.[8]  L.

Civ. R. 56(a) ("[A]ny material fact not disputed shall be deemed undisputed for

purposes of the summary judgment motion.");  *McLendon v. Cont'l Grp., Inc.*, 602

F. Supp. 1492, 1519 n.22 (D.N.J. 1985) (denying motion to strike where "the

---

[8] (*Compare* Kelston Decl. ¶ 6 ("Participants gave an average of 1.5 responses to
the question: "What would you expect from a breakfast cereal which was said to be
'made with All Natural Corn?'" Participants gave an average of 1.2 responses to
the question: "What would be absent – if anything – from such a product?" In total,
more than 180 different responses were recorded.") *with* Defendant's Response to
Plaintiffs' Statement of Facts In Opposition to Defendant's Motion for Summary
Judgment Under The First Amendment (Dkt. 157) (Admitting Plaintiffs' Statement
No. 13 ("On average, respondents to the Ostberg Survey offered 1.5 responses to
the first question …. and 1.2 responses to the second question …."); Admitting
Plaintiffs' Statement No. 27 ("Respondents to the Ostberg Survey provided more
than 180 responses to the [applicable] question[] ….")) *and* Response to Plaintiffs'
Statement of Undisputed Facts in Opposition to General Mills, Inc.'s Motion for
Partial Summary Judgment on Plaintiffs' Injunctive Relief Claims, Non- Consumer
Protection Claims, and Claims as to Honey Kix and Berry Berry Kix (Dkt. 163,
Ex. 1) (Admitting Plaintiffs' Statement of Fact No. 24 ("On average, respondents
to the Ostberg Survey offered 1.5 responses to the first question …. and 1.2
responses to the second question …."); Admitting Plaintiffs' Statement of Fact No.
30 ("Respondents to the Ostberg Survey provided more than 180 responses to the
[applicable] question[] ….")).)

accuracy of what are mostly public records is never disputed" and finding

objections to undisputed facts "to be against the spirit of the Federal Rules of Civil

Procedure."), *aff'd.*, 908 F.2d 1171 (3d Cir. 1990).

> **b.    Mr. Kelston statements provide only the factual predicate for arguments that are properly contained in Plaintiffs' substantive briefs.**

General Mills next erroneously claims that Mr. Kelston's statements

constitute impermissible factual and legal argument.  In support of its argument,

General Mills cites only to *Hutchins v. UPS*, 197 F. App'x 152, 158 (3d Cir. 2006),

which is easily distinguishable.  In *Hutchins*, the Declaration at issue was

"*extremely argumentative* and include[d] various instances of legal analysis and

factual argumentation."  197 F. App'x at 158 (emphasis added).  The Declaration

in *Hutchins* was so egregious that, after issuing an Order to Show Cause, the Court

below fined the offending attorney $2,500.  *Hutchins v. UPS*, No. 2:01-cv-01462-

WJM-RJH (D.N.J. May 21, 2004).

The Kelston Declaration, in contrast, contains no factual or legal argument.

Analysis and argument are where they belong, "in Plaintiffs' Memorandum in

Opposition to Defendant General Mills, Inc.'s Motion for Summary Judgment on

Damages," (Kelston Decl. ¶ 4), "in Plaintiffs' Memorandum in Opposition to

Defendant General Mills, Inc.'s Motion for Summary Judgment Under the First

Amendment, and in Plaintiffs' Memorandum in Opposition to Defendant General

Mills, Inc.'s Motion for Partial Summary Judgment." (*Id.* ¶ 7.) Indeed, General

Mills devotes parts of its Motion not to attacking Mr. Kelston's Declaration, but to

critiquing how the results of Mr. Kelston's inquiries were used in Plaintiffs'

substantive briefs. (Def. Mem. at 2-4.)

Moreover, General Mills apparently misunderstood the nature of Mr.

Kelston's inquiry with regard to the Nielsen sales data. Complaining that the

Average Unit Price "does not exist independently in the record," General Mills

erroneously claims that it is a "figure conceived of and calculated by Plaintiffs'

counsel." (Def. Mem. at 6.) General Mills presumes math where none exists. Mr.

Kelston's inquiry consisted of nothing more than examining the Nielsen sales

data—which is contemporaneously submitted herewith (*see* Kelston Decl., Ex.

A)—and reporting the figures contained therein.[9] Accordingly, the results of Mr.

---

[9] The Average Unit Price data cited for Ms. Bevans is on lines 38267 (Avg. Unit
Price 12 oz.) and 38269 (Avg. Unit Price 18 oz.) of the Kix sales data file bates
numbered GMI_KIX00110720, New York tab. The relevant time period (2010-
2011) spans columns E through W. For 12 oz. Kix, the low Average Unit Price
($3.45) is in column I, and the high Average Unit Price ($4.39) is in columns J and
S. For 18 oz. Kix, the low Average Unit Price ($3.69) is in column U, and the high
Average Unit Price ($5.39) is in column W. Ms. Marcus' data is in the Kix sales
data file bates numbered GMI_KIX00110720, Philadelphia tab. The relevant time
period (2010-2011) spans columns E through W. For 12 oz. Kix, the low Average
Unit Price ($2.94) is in cell I38267, and the high Average Unit Price ($3.64) is in
cell P38267. For 18 oz. Kix, the low Average Unit Price ($3.32) is in cell U38269
and the high Average Unit Price ($4.93) is in cell I38269. Ms. Zardeneta's data is
in Kix sales data file bates numbered GMI_KIX00110640, Los Angeles tab. The
relevant time period spans columns E through S. The low Average Unit Price
($3.63) for 12 oz. Kix is in cell R38267, and the high Average Unit Price ($4.36)

Kelston's inquiry *do* exist independently in the record and cannot reasonably be characterized as factual or legal argument.

Accordingly, Mr. Kelston's Declaration fully comports with the requirements of Local Civil Rule 7.2(a).

**B.      Sixth-grade arithmetic does not constitute "impermissible expert testimony" barred by Federal Rule of Evidence 702.**

General Mills next attempts to strike the basic mathematical calculations Mr. Kelston performed on the Ostberg Survey data as the work of a skilled expert, requiring admission under Federal Rule of Evidence 702, rather than lay testimony within the realm of ordinary individuals admissible under Federal Rule of Evidence 701.  In fact, Mr. Kelston did nothing more than calculate the average number of responses to certain questions in the Ostberg Survey, a simple function that falls well within the bounds of permissible lay testimony.[10]

---

for 12 oz. Kix is found in cells O38267 and P38267.  Mr. Kellogg's data is in Kix sales data files bates numbered GMI_KIX00110870 and GMI_KIX00111480, San Francisco tab.  The relevant time period (2009-2013) spans columns E through AB of file GMI_KIX00110870 and columns E through W of file GMI_KIX00111480. For 12 oz. Kix, the low Average Unit Price ($2.88) is in cell AB38267 of GMI_KIX00110870, and the high Average Unit Price ($4.43) is in cells N38267 and P38267 of GMI_KIX00111480.  For 18 oz. Kix, the low Average Unit Price ($3.36) is in cell H38269 of GMI_KIX00110870, and the high Average Unit Price ($4.90) is in cells I38269 and J38269 of GMI_KIX00111480.

[10] As discussed *supra* Section III.A.b, Mr. Kelston merely identified the highest and lowest prices in certain rows of the Nielsen sales data, but performed no mathematical calculations.

The First Circuit, in *United States v. Sepúlveda-Hernández*, recently explained why basic mathematical calculations are traditionally admitted as lay testimony under Fed. R. Evid. 701, writing:

> [W]e have scant difficulty in concluding that Rule 701 is the better fit for simple multiplication …. Lay opinion is generally thought to encompass information that can be deduced from a process of reasoning familiar in everyday life. Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence. One does not need a graduate degree in chemistry to master multiplication: in this country, that subject is universally taught in elementary schools. Without such a rudimentary skill, ordinary tasks such as figuring a family's budget, shopping in a supermarket, and converting a recipe for four into a meal for ten would assume Herculean proportions.

752 F.3d at 34-35.  This accords with the law in the Third Circuit.  *See, e.g.*, *United States v. Thompson*, 393 F. App'x 852, 858 (3d Cir. 2010) ("[L]ay testimony results from a process of reasoning familiar in everyday life ….") (internal quotations and citation omitted).

Indeed, calculating averages is hardly expert testimony so much as grade-school math.  For example, New Jersey's core curriculum specifies that calculating averages—formally referred to as the "mean"[11]—is a skill to be taught to sixth grade students.  *See* New Jersey Dep't of Education, Grade 6 Overview at 2, *available at* http://www.state.nj.us/education/modelcurriculum/math/6.pdf (sixth

_____

[11] *See also* Brighter Child, Math (Grade 5) (2006) at 28, *available at*: https://books.google.com/books?id=HsmUjGgjJmUC ("To find the mean, add all the numbers in the list, then divide the sum by the total number of addends.").

grade students are expected to "[d]evelop [an] understanding of statistical variability," and will be expected to "[s]ummarize numerical data sets in relation to their context, such as by … [g]iving quantitative measures of center (median and/or mean) ….").

General Mills complains that Mr. Kelston's Declaration transformed into expert testimony with regard to the Ostberg Survey data because he calculated the averages of numbers from "survey data compiled by an expert witness." (Def. Mem. at 7.) But adding and dividing numbers taken from data compiled an expert witness is still just adding and dividing numbers—the sort of math that all sixth grade New Jersey students (and jurors) are expected to perform. *See Major Tours,* 799 F. Supp. 2d at 412 n.35 (noting that a jury could perform "clerical function" such as "adding up expenses and subtracting costs based on financial documents").

General Mills also claims that Mr. Kelston's statements must be deemed expert testimony with regard to the Nielsen sales data because he chose which data fields to examine. (*Id.* (arguing that selecting the "package size, geographic region, and time period" is "the work of someone familiar with and trained in the interpretation of this data").) The appropriate forum in which to quibble with Mr. Kelston's choices would have been General Mills' Reply; however General Mills does not argue that  Mr. Kelston's use of the data is incorrect, much less present the expert evidence that would be needed to make such an argument according to

General Mills' reasoning.  (*See also infra* Section III.C.)  Moreover, Mr. Kelston in his Declaration explained that he selected "the regions in which each of the Plaintiffs made most of their purchases of Kix, throughout the approximate time periods during which each Plaintiff recalled purchasing Kix."  (Kelston Decl. ¶ 3.)

Accordingly, General Mills' claim that Mr. Kelston's statements constitute impermissible expert testimony is meritless as Mr. Kelston's statements are admissible as lay testimony under Federal Rule of Evidence 701.

### C. Federal Rule of Evidence 1006 expressly permits summary evidence to prove the contents of voluminous materials such as the gigabyte of Nielsen sales data spanning more than a dozen spreadsheets.

Finally, Mr. Kelston's statements regarding the Nielsen sales data are independently admissible as summary evidence pursuant to Federal Rule of Evidence 1006.  To admit a summary as evidence, the Rule requires that:  (1) the underlying material is voluminous; (2) the underlying voluminous material is made available to the opposing party; (3) the summary is accurate; and (4) the underlying material is admissible.  Fed. R. Civ. P. 1006; *Malik*, 424 F. App'x at128; *Manamela*, 463 F. App'x at 132.  Each of these requirements is easily satisfied.

First, the Nielsen sales data that Mr. Kelston examined is undeniably voluminous.  The Rule does not require that it be "literally impossible to examine all the underlying records," only that "in-court examination would be an inconvenience."  *United States v. Onque*, No. 10-510 (JBS), 2015 U.S. Dist.

LEXIS 15602, at *33-34 (D.N.J. Feb. 9, 2015) (citation and internal quotation marks omitted).  The Nielsen sales data, consisting of more than a dozen Excel spreadsheets, each containing tens of thousands of lines of sales data for several thousand different cereal products, easily meets this standard.

Second, General Mills has had access to the underlying voluminous material since at least October 2014, when they produced the data to Plaintiffs.  (*See also* Def. Mem. at 6 (twice acknowledging that the Nielsen sales data was "data produced in the litigation ….").)

Third, the accuracy of Mr. Kelston's summary is not disputed and can be easily confirmed using the underlying data.  (*See supra* n.9.)  Moreover, General Mills cannot reasonably dispute—and a cursory examination of the data confirms—that the data "include Dollar Volume, Unit Volume and Average Unit Price for each product tracked, given in 4 or 5 week increments, from approximately June 2010 through May 2014."  (Kelston Decl. ¶ 2.)

Fourth, the Nielsen sales data is admissible.  Even assuming *arguendo* that the Nielsen sales data is hearsay, "[h]earsay statements may be considered on a motion for summary judgment if they are capable of admission at trial."  *Morro v. DGMB Casino, LLC*, No. 13-cv-5530 (JBS/JS), 2015 U.S. Dist. LEXIS 85204, at *10 n.2 (D.N.J. June 30, 2015) (citing *Shelton v. Univ. of Med. & Dentistry*, 223 F.3d 220, 223 n.2 (3d Cir. 2000)); *cf. Mahoney v. McDonnell*, No. 14-4257, 2015

17

U.S. App. LEXIS 10662, at *14 (3d Cir. N.J. June 24, 2015) (Rule 56 bars only

consideration of "*inadmissible* hearsay evidence." (emphasis in original)); *see also*

*Watkins v. Merriel*, No. 12-4851 (FLW), 2015 U.S. Dist. LEXIS 130998, at *26

n.11 (D.N.J. Sept. 29, 2015) (stating that it is well established that "a non-moving

party's evidence must only be <u>convertible</u> to admissible form at trial in order to

survive summary judgment." (emphasis in original)).  Accordingly, because

Plaintiffs will be "able to lay a proper foundation for the admission of this

evidence at trial," *Kohn v. Woods*, 541 F. App'x 163, 167 n.6 (3d Cir. 2013); Fed.

R. Evid. 803(6)(D), the Court may consider the Nielsen sales data in evaluating

Plaintiffs' oppositions to General Mills' motions for summary judgment.

Finally, the Court should exercise its considerable discretion to admit the

summary evidence of the Nielsen sales data.  *United States v. Bansal*, 663 F.3d 634

(3d Cir. 2011), is instructive in this regard.  *Bansal* involved a scheme to distribute

controlled substances over the Internet.  The defendant objected to the introduction

of an exhibit summarizing invoices from a two-year span that the government had

collected from defendant's associates.  The defendant also objected to the use of a

second summary exhibit identifying what percent of each associates' sales were

attributable to the sales of controlled substances.  Affirming the District Court's

decision to admit the summaries, the Third Circuit noted "[g]iven the volume of

documents each Exhibit summarized, we have no difficulty holding that the trial

court was within its discretion when it concluded that summaries would be helpful to the jury." Given the overwhelmingly voluminous nature of the Nielsen sales data, Mr. Kelston's summaries will be helpful to the Court.

Accordingly, the Court should admit Mr. Kelston's statements as summary evidence pursuant to Federal Rule of Evidence 1006.

## IV. <u>CONCLUSION</u>

In support of Plaintiffs' Opposition to General Mills' trio of summary judgment motions, Henry J. Kelston submitted a perfectly valid Declaration that comported with all of the applicable rules. Mr. Kelston had personal knowledge of each of the facts to which he attested. Mr. Kelston did nothing more than identify the highest and lowest prices in certain rows of the Nielsen sales data and use simple arithmetic to calculate the average number of responses to certain questions in the Ostberg Survey data—the results of which General Mills admits are undisputed statements of material fact. Finally, Mr. Kelston's statements are independently admissible as summary evidence of the Nielsen sales data comprising hundreds of thousands of cells spanning multiple spreadsheets.

For the above reasons, the Court should deny General Mills' motion to strike paragraphs 1-7 of Mr. Kelston's Declaration.

DATED: October 30, 2015

**LITE DEPALMA GREENBERG, LLC**

*s/ Bruce D. Greenberg*

Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone:  973-623-3000
Facsimile:   973-877-3845

*Court Appointed Interim Liaison Counsel*

**MILBERG LLP**
Ariana J. Tadler (admitted *pro hac vice*)
Henry J. Kelston (admitted *pro hac vice*)
One Pennsylvania Plaza
New York, New York 10119
Telephone:  212-594-5300
Facsimile:   212-868-1229

**REESE LLP**
Michael R. Reese (admitted *pro hac vice*)
George V. Granade (admitted *pro hac vice*)
875 Avenue of the Americas
New York, New York 10001
Telephone:  212-643-0500
Facsimile:   212-253-4272

*Court Appointed Interim Co-Lead Class
Counsel*