**PERKINS COIE LLP**
David T. Biderman (*Admitted Pro Hac Vice*)
505 Howard Street, Suite 1000
San Francisco, CA  94105
Phone:  415-344-7000
Fax:  415-344-7050

Charles C. Sipos (*Admitted Pro Hac Vice*)
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Phone:  206-359-8000
Fax:  206-359-9000

**BLANK ROME LLP**
Stephen M. Orlofsky
David C. Kistler
New Jersey Resident Partners
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
Phone:  609-750-2646
Fax:  609-897-7286

*Attorneys for Defendant, General Mills, Inc.*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE GENERAL MILLS INC. KIX CEREAL LITIGATION | **Case No. 2:12-cv-249-KM-JBC**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT GENERAL MILLS, INC.'S REPLY IN SUPPORT OF MOTION TO
STRIKE THE DECLARATION OF HENRY KELSTON**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT ................................................................................................. 2

      A.      The Kelston Declaration Violates Local Rule 7.2(a). ......................................... 2

      B.      The Kelston Declaration Violates Rule 702. ....................................... 5

      C.      The Kelston Declaration is Not Permissible Under Rule 1006.......................................................................................... 7

III.    CONCLUSION................................................................................................ 7

14577-0070/128480603

# TABLE OF AUTHORITIES

Page

CASES

*Asplundh Mfg. Div. v. Benton Harbor*,
  57 F.3d 1190 (3d Cir. 1995)..................................................................................7

*Brennan v. Elizabeth Bd. of Educ.*,
  2008 WL 756117 (D.N.J. Mar. 19, 2008)..............................................................5

*Caliendo v. Trump Taj Mahal Assoc.*,
  2007 WL 1361258 (D.N.J. May 1, 2007) ..............................................................4

*Carmen v. Metrocities Mortg.*,
  2010 WL 42115 (D.N.J. Feb. 1, 2011) ..................................................................2

*Cohen v. Kurtzman*,
  45 F.Supp.2d 423 (D.N.J. 1999) ...........................................................................6

*Dewey v. Volkswagen AG*,
  558 F.Supp.2d 505 (D.N.J. 2008) .........................................................................2

*Eichorn v. AT&T Corp.*,
  484 F.3d 644 (3d Cir. 2007)..................................................................................7

*Hutchins v. United Parcel Serv., Inc.*,
  197 F. App'x 152 (3d Cir. 1992) ...........................................................................4

*Khodara Environmental v. Chest Township*,
  2007 WL 3146745 (W.D. Pa. Oct. 26, 2007) ....................................................3, 4

*McCann v. George W. Newman Irrevocable Trust*,
  2007 WL 1352832 (D.N.J. May 7, 2007)..............................................................4

*Schatz-Bernstein v. Keystone Food Prods.*,
  2009 WL 1044946 (D.N.J. Apr. 17, 2009) ............................................................2

*State of NY v. Kraft General Foods*,
  926 F. Supp. 321 (S.D.N.Y. 1995) .......................................................................5

*Sunoco v. MX Wholesale Fuel*,
  565 F.Supp.2d 572 (D.N.J. 2008) .........................................................................2

*U.S. v. Eastman Kodak*,
  853 F.Supp. 1454 (W.D.N.Y. 1994) .....................................................................5

14577-0070/128480603

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. Christie*,
    624 F.3d 558 (3d Cir. 2010)............................................................................................3

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
    862 F.Supp.2d 1322 (S.D. Fla. 2012) ........................................................................5

## RULES

Fed. R. Evid. 602 .............................................................................................................3

Fed. R. Evid. 701 ....................................................................................................... *passim*

Fed. R. Evid. 702 ..........................................................................................................1, 5

Fed. R. Evid. 1006 .......................................................................................................1, 7

L.R. 7.2(a) .................................................................................................................. *passim*

-iii-

## I.     INTRODUCTION

The Declaration of Henry Kelston in Support of Plaintiffs' Opposition to General Mills, Inc.'s Motions for Summary Judgment ("Kelston Declaration"), counsel for Plaintiffs, contains Kelston's analysis and interpretation of data sets of which he has no personal knowledge. These analyses are then leveraged for improper factual argument. This violates both the "personal knowledge" requirement of Local Civil Rule 7.2(a), and its prohibition on "argument of the facts." *See* L.R. 7.2(a). It also violates Rule 702, because data interpretation of the type done by Kelston is the province of experts, not party lawyers. *See* General Mills' Motion to Strike Portions of the Declaration of Henry Kelston (Dkt. No. 175) ("Motion to Strike").

Plaintiffs' Opposition to General Mills' Motion to Strike (Dkt. No. 177) ("Opposition" or "Opp.") defends Kelston's Declaration by arguing: (1) he has "personal knowledge" of what is contained in these data sets; (2) his analysis of this data constitutes admissible "lay testimony" under Rule 701; and (3) because the data at issue is voluminous, Rule 1006 allows Kelston to testify about it as "summary evidence." Opp. at 8-16. All three assertions are wrong.

First, while Kelston may have knowledge of the fact these data sets were produced in the litigation, he lacks personal knowledge *of what the data actually is*. That is what is relevant to the Motion to Strike, and on that point the Opposition offers nothing to demonstrate that Kelston has the requisite personal knowledge of data sets he had no involvement in collecting, compiling, or interpreting.

Second, case law confirms that analysis of this sort of data is the work of qualified experts, not lawyers. Rule 701 does not allow Kelston to serve in that capacity here. Moreover, the Opposition's reliance on Rule 701 only proves that L.R. 7.2(a) has been violated, as Rule 701 governs "testimony in the form of an opinion," while L.R. 7.2(a) dictates that declarations must be "restricted to statements of fact."

Third, Rule 1006 does not allow Plaintiffs to disregard other evidentiary Rules by stating the material at issue is "voluminous." Rule 1006 in fact *prohibits* the "back-door" admission of otherwise inadmissible—here, inadmissible for lack of personal knowledge—evidence.

General Mills' Motion to Strike should be granted, and paragraphs 1 through 7 of the Kelston Declaration should be stricken.

## II.     ARGUMENT

### A.     The Kelston Declaration Violates Local Rule 7.2(a).

The Opposition asserts that the Kelston Declaration is in compliance with Rule 7.2(a) because: (1) he has "personal knowledge" of the data sets at issue, and (2) the Kelston Declaration does not contain "factual argument." Opp. at 8-13. These arguments are refuted by Plaintiffs' own authorities and the Kelston Declaration itself.

*First*, courts in this District interpret the "personal knowledge" component of Rule 7.2(a) strictly, especially when party lawyers attempt to act as fact witnesses interpreting the evidence. *See Carmen v. Metrocities Mortg.*, 2010 WL 42115, at *2 n.3 (D.N.J. Feb. 1, 2011) (striking declaration of party lawyer under L.R. 7.2(a) for offering certification that spoke to evidence in case and contained information not "within his personal knowledge"); *Schatz-Bernstein v. Keystone Food Prods.*, 2009 WL 1044946 at *2 (D.N.J. Apr. 17, 2009) (striking portions of counsel's certification under L.R. 7.2(a) for containing information not within personal knowledge); *Sunoco v. MX Wholesale Fuel*, 565 F.Supp.2d 572, 576-77 (D.N.J. 2008) (striking attorney certification that "does not contain facts within the personal knowledge of the affiant"); *Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 510 n.1 (D.N.J. 2008) ("Plaintiffs' counsel…submitted his own declaration that contains facts that may not be within his personal knowledge, in addition to factual and legal arguments.") (striking offending portions).[1] The same outcome is required here given Kelston's lack of personal knowledge and the Opposition's failure to show such knowledge exists.

As to the Nielsen data, the Opposition make the bare assertion that Kelston has "personal knowledge" of what that data represents. Opp. at 9. But there is no citation to any record

---

[1] The Opposition makes, as an initial argument, the unfounded assertion that the Motion to Strike does not "provide argument with regard to five of the challenged paragraphs." Opp. at 7. This is absurd, as pages 4-6 of the Motion refer specifically to all seven contested paragraphs in the Kelston Declaration. *See* Motion to Strike at 5 (citing all seven contested paragraphs).

evidence to substantiate that assertion. The "personal knowledge" standard requires a showing *with evidence* that the declarant has familiarity with the matters at issue. *See United States v. Christie*, 624 F.3d 558, 568 (3d Cir. 2010) ("personal knowledge" standard satisfied in case where witness testified to results of criminal investigation, based on evidence showing the witness "oversaw the investigation…was thoroughly familiar with the case, coordinated the efforts of other agents, and personally directed the enforcement steps"); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter *only if evidence is introduced sufficient to support a finding that the witness has personal knowledge* of the matter.") (emphasis added).

Here, there is nothing to show that Kelston knows anything about third-party Nielsen data beyond the fact that it was produced in this litigation. There is no evidence that Kelston has any familiarity with: (a) how Nielsen compiles its data, (b) what each unit of information ("Dollar Volume," "Unit Volume," or "Average Unit Price") represents, or (c) what retailers are, or are not, included within Nielsen's categorization of geographic regions. Nor is there any proof that Kelston has worked with similar datasets in the past, such that he is competent to draw any conclusions about the specific dataset under consideration here. Indeed, the only evidence before the Court on Kelston's understanding of the nature of the Nielsen data is his statement that Nielsen data is "proprietary" to Nielsen. *See* Declaration of Henry Kelston in Support of Plaintiffs' Oppositions to Motions to Strike ¶ 3 (Dkt. No. 179). This is not "personal knowledge." It is the absence of such knowledge.

Plaintiffs' own authority only proves the point. *See* Opp. at 9-10. For example, in *Khodara Environmental v. Chest Township*, the personal knowledge requirement was satisfied because the declarant had pre-existing knowledge about the records he was examining and testifying to. 2007 WL 3146745, at*1 (W.D. Pa. Oct. 26, 2007). In *Khodara*, the declarant was a former township supervisor who had reviewed records relating to an ordinance passed by the township. *Id.* at *1. Even though the declarant was not the supervisor at the time the ordinance was formally approved, there was still a basis for the declarant's personal knowledge as "an observer of township government actions with respect to this matter." *Id.* It was this existing

-3-

knowledge, *combined* with a review of the records themselves, that provided the necessary foundational knowledge. *Id.* Here, there is nothing in the Kelston Declaration to prove that Kelston has "personal knowledge" about what is, or is not, contained in or represented by Nielsen data. An uninformed review of records that the declarant knows nothing about does not establish "personal knowledge" under *Khodara* or any other authority.[2]

The same is true as to Kelston's analysis of Dr. Ostberg's survey data. Kelston does not have "personal knowledge" of how the survey data was collected or compiled by Dr. Ostberg, simply by virtue of the fact that it has been produced in the litigation. If Plaintiffs' wanted certain information about Dr. Ostberg's survey before the Court, the appropriate method was to make the proper inquiries during Dr. Ostberg's deposition and then offer the testimony for the Court's consideration.[3]

*Second*, the Kelston Declaration contains improper "argument of the facts." L.R. 7.2(a). The Opposition interprets this portion of the Rule to prohibit only statements that are, literally, argumentative. Opp. at 11. But Rule 7.2(a) is not just a ban on adjectives. Rather, it prevents parties from using declarations to present their perspective on "how documents produced in [the] litigation should be interpreted." *Hutchins v. United Parcel Serv., Inc.*, 197 F. App'x 152, 158

---

[2] Plaintiffs' other authorities likewise undermine their position. The Opposition, citing *McCann v. George W. Newman Irrevocable Trust*, contends that "an attorney's personal involvement in a matter as counsel" can provide the requisite "personal knowledge." Opp. at 3. But in *McCann*, the attorney's declaration summarized facts about the litigation itself, not evidence produced out of proprietary third-party databases. *See McCann*, 2007 WL 1352832, at *6 (D.N.J. May 7, 2007) (declaration of counsel summarizing relationship among the parties to the litigation, counsel's involvement in the trust created by one of the parties, and state court filings related to the trust itself).

[3] It is for this reason that General Mills, where appropriate, either did not dispute or only disputed in part aspects of certain factual statements offered in connection with summary judgment. *See* Opp. at 10 n. 8. This does not enable what is otherwise a violation of the Local Rules, which parties have an independent obligation to comply with. *See Caliendo v. Trump Taj Mahal Assoc.*, 2007 WL 1361258, at *2 (D.N.J. May 1, 2007) ("Plaintiffs cannot complain that they are surprised by the requirements in the Local Rules since 'all litigants who wish to bring their cases in federal court must know and abide by both the Federal and Local Rules of Civil Procedure.'"). And, of course, Plaintiffs' argument with respect to Dr. Ostberg's survey data does not extend to the Kelston Declaration's testimony concerning Nielsen data.

-4-

(3d Cir. 1992); *see also Brennan v. Elizabeth Bd. of Educ.*, 2008 WL 756117, at *2 (D.N.J. Mar. 19, 2008) (striking attorney declaration because it "argues Plaintiff's own version of the facts").

The Kelston Declaration does just that, particularly with respect to the Nielsen data. General Mills' Motion to Strike does not " misunderstand" Kelston's use of that data, as the Opposition asserts. Opp. at 12. What is objectionable is that Kelston relied on data he has no personal knowledge of: (a) to argue that his clients purchased Kix cereal at certain times for certain prices; (b) to argue that Nielsen's calculation of an "Average Unit Price" represents those prices; and (c) to argue that Nielsen's categorization of regions necessarily comprises stores where his clients purchased those cereals. Kelston Declaration ¶¶ 1-4. That is what the Kelston Declaration purports to do, and Plaintiffs cannot evade the prohibitions in Rule 7.2(a) simply because the Kelston Declaration concludes that argument with a redundant statement that "the results of my inquiry are stated in Plaintiffs' Memorandum in Opposition to Defendant General Mills, Inc.'s Motion for Summary Judgment." *Id.* ¶ 4.

## B.    The Kelston Declaration Violates Rule 702.

Next, the Opposition contends that paragraphs 1 through 7 of the Kelston Declaration constitutes lay testimony permissible under Rule 701. That is incorrect, as case law confirms this sort of data is properly interpreted by experts. Similarly, Plaintiffs' resort to Rule 701 as a justification for the Kelston Declaration only helps prove that the testimony offered reflects Kelston's improper opinion testimony.

First, analysis of information contained in proprietary Nielsen datasets, like the type relied on by Kelston to draw inferences about pricing and damages, is a function of expert testimony. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 862 F.Supp.2d 1322, 1324 (S.D. Fla. 2012) (expert analyzing data obtained from Nielsen Company regarding grocery store data); *U.S. v. Eastman Kodak*, 853 F.Supp. 1454, 1466 (W.D.N.Y. 1994) (summarizing expert testimony based on "empirical data (known as Nielsen 'scan trac' data) representing consumers' film purchases at food markets in five major cities"); *State of NY v. Kraft General Foods*, 926 F.

Supp. 321, 335 (S.D.N.Y. 1995) (explaining that court had appointed independent economic expert to interpret Nielsen Scantrack data).

Moreover, Plaintiffs themselves—when it previously served their litigation objectives—characterized this information as "expert testimony." General Mills served discovery on the Plaintiffs asking them to substantiate their damages and provide evidence of specific amounts of damage based on prices paid for Kix cereal. Defendant's Statement of Facts in Support of Motion for Summary Judgment on Damages (Dkt. No. 138-2) (Statement Nos. 20, 21). Plaintiffs refused to respond on the basis that these requests called for "information which is subject to expert discovery." *See* Plaintiffs' Response to Defendant's Statement of Facts in Support of Motion for Summary Judgment on Damages (Plaintiffs' Response to Statement No. 21) (Dkt. No. 151-1). Thus, Plaintiffs refused to provide facts supporting their damages on grounds that it is "expert testimony," yet simultaneously relied on their counsel to do so in motion practice and describe it as "permissible lay testimony." *Id.*; Opp. at 13.

Second, even if the analysis in the Kelston Declaration of the Nielsen data sets and the Ostberg survey data were properly considered "lay testimony" under Rule 701, that would only prove to show that Rule 7.2(a) has been violated. Rule 701 governs the admission of "testimony *in the form of an opinion*." *See* Fed. R. Evid. 701(a) (emphasis added). Yet, Rule 7.2(a) mandates that information in declarations are "*restricted to statements of fact*." *Id.*; *see also Cohen v. Kurtzman*, 45 F.Supp.2d 423, 432 (D.N.J. 1999) ("Statements *which constitute the opinion or belief* of the affiant, or matters outside the personal knowledge of the affiant, are not 'competent' evidence [under L.R. 7.2(a)].") (emphasis added). Thus, the Opposition's extensive reliance on Rule 701 to defend the Kelston Declaration only proves that L.R. 7.2(a) was violated.

Moreover, Rule 701 is not blanket authority for a witness to testify without regard to whether the witness is actually familiar with what he is testifying to. As the Third Circuit has cautioned, "Rule 701 requires that a lay opinion witness have a reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses… In order to satisfy these Rule 701 requirements, the trial judge should rigorously examine the

-6-

reliability of the lay opinion by ensuring that the witness possesses sufficient special knowledge or experience which is germane to the lay opinion offered." *Asplundh Mfg. Div. v. Benton Harbor*, 57 F.3d 1190, 1200-01 (3d Cir. 1995). That limitation on Rule 701 has particular force here, as the Kelston Declaration purports to analyze proprietary and specialized data sets without any showing that Kelston has "sufficient special knowledge" germane to that analysis. *Id.*

## C.      The Kelston Declaration is Not Permissible Under Rule 1006.

Finally, the Opposition defends the Kelston Declaration as permissible testimony under Rule of Evidence 1006, which allows the "use of a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. The Opposition fails to recognize that Rule 1006 does not allow all other requirements of admissibility to be tossed aside whenever the underlying material is "voluminous." The witness offering the summary must still have personal knowledge of what he is summarizing.

As the Third Circuit explained in *Eichorn v. AT&T Corp.*, "Courts have cautioned that Rule 1006 is not a back-door vehicle for the introduction of evidence that is otherwise inadmissible, and that the voluminous evidence that is the subject of the summary must be independently admissible." 484 F.3d 644, 650 (3d Cir. 2007) (rejecting reliance on Rule 1006 where the witness did not have "personal knowledge of the underlying facts and no relevant experience in training" as to the data he was purporting to summarize). The same thing is true in this case: Rule 1006 cannot cure Kelston's lack of personal knowledge about the contents of the materials he purports to summarize. *See* Part II.A, *infra*.

## III.    CONCLUSION

For the foregoing reasons, General Mills respectfully requests that the Court strike paragraphs 1 through 7 of the Kelston Declaration.

Dated this 6th day of November, 2015.

By: */s/ Stephen M. Orlofsky*
    **BLANK ROME LLP**
    Stephen M. Orlofsky
    David C. Kistler
    New Jersey Resident Partners
    301 Carnegie Center, 3rd Floor
    Princeton, NJ  08540
    Phone:  609-750-2646
    Fax:  609-897-7286

    **PERKINS COIE LLP**
    David T. Biderman (*Admitted Pro Hac Vice*)
    505 Howard Street, Suite 1000
    San Francisco, CA  94105
    Phone:  415-344-7000
    Fax:  415-344-7050

    Charles C. Sipos (*Admitted Pro Hac Vice*)
    1201 Third Avenue, Suite 4900
    Seattle, WA  98101
    Phone:  206-359-8000
    Fax:  206-359-9000

    *Attorneys for Defendant, General Mills, Inc.*

14577-0070/128480603